UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:09 CR 86 |
| ) | |
| NICHELLE BENFORD ) | |

## OPINION and ORDER

This matter is before the court on defendant Nichelle Benford's motion to suppress cell phone records. (DE # 24.) Though defendant has requested an evidentiary hearing on her motion, "[e]videntiary hearings are not required as a matter of course; a district court need conduct a hearing only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (internal quotation marks and citation omitted). Because defendant points to no specific disputed issue of fact that would affect the outcome of the motion, an evidentiary hearing is not necessary in this case.

The Government alleges that on February 13, 2003, at about 5:21 a.m., a witness noticed that Car's Towing in Schererville, Indiana, was on fire. (DE # 1.) Investigators questioned an individual suspected of starting the fire, who told the investigators that he was with defendant during the early morning hours of February 13th. (*Id.*)

The Government contends that local police used a State of Indiana subpoena to obtain the cell phone records belonging to defendant and the suspected arsonist. (DE # 31 at 1.) The information obtained includes "cell-site data"; essentially, this data reveals the general vicinity of where a cell phone was located at a particular point in time by identifying which cell tower communicated with the cell phone while it was turned on. (*See id.* at 2.) The Government contends that defendant's cell-site information shows that defendant's cell phone communicated with cell phone towers in Chicago around the time of the fire, thus reputing the suspected arsonist's alibi. (DE ## 1, 31.)

Defendant was subpoenaed to testify before a grand jury regarding the Government's case against the suspected arsonist. Chief Judge Philip Simon provided defendant with use immunity prior to her testimony. Defendant testified before the grand jury that she was indeed with the suspected arsonist during the fire. (DE # 1 at 3-4.) The Government then charged defendant with making false statements to a grand jury, and it appears the Government intends to use defendant's cell-site data as part of its case against defendant. (*Id.*)

Defendant has moved to suppress her cell phone records because they were obtained pursuant to an unreasonable seizure in violation of the Fourth Amendment. (DE # 24.) Defendant argues that people have a reasonable expectation of privacy in their personal cell phone data and cites a number of cases purportedly in support of this argument. (*Id.*)

The United States Supreme Court analyzes the propriety of a search under the Fourth Amendment using both subjective and objective components: the Fourth Amendment is not implicated unless the individual manifested a subjective expectation of privacy in the object of the challenged search *and* society is willing to recognize that expectation as reasonable. *Kyllo v. United States,* 533 U.S. 27, 33 (2001). Thus, "application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted); *see also Illinois v. Caballes,* 543 U.S. 405, 408 (2005) ("Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment.*").*

The United States Supreme Court has held that a telephone subscriber has no reasonable expectation of privacy in records of the numbers dialed from his telephone. *Smith v. Maryland*, 442 U.S. 735 (1979). In so holding, the Court reasoned:

> All telephone users realize that they must "convey" phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills.

*Id.* at 742. This holding is consistent with other decisions rendered by the Court, such as *United States v. Miller,* 425 U.S. 435, 442-43 & n.5 (1976), in which the Court held that individuals have no legitimate expectation of privacy in checks, financial statements, and deposit slips subpoenaed from an individual's bank by the government, even

where the individual was given no notice of the subpoenas. The Court has summarized the principles set forth in cases like *Smith* and *Miller* by stating that "when a person communicates information to a third party even on the understanding that the communication is confidential, he cannot object if the third party conveys that information or records thereof to law enforcement authorities." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984).

This case presents a relatively novel issue: whether an individual has a legitimate expectation of privacy in cell-site data–that is, a cell phone company's records revealing which cell phone towers communicated with an individual's cell phone. As the Government points out, a Northern District of Georgia district court examined this subject in great detail in *United States v. Suarez-Blanca,* No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156, at *8 (N.D. Ga. Apr. 21, 2008). The *Suarez-Blanca* court applied the logic of *Smith* and *Miller* to cell-site data and found "little distinction between historical cell site information retained as business records and the records from banks and utilities." *Id.* The court concluded that individuals do not have a legitimate expectation of privacy in the information showing which cell phone tower communicated with his or her cell phone at a particular moment in the past:

> The historical cell site information encompasses records identifying the relay tower or towers through which a customer's calls are handled. Thus, a cell phone user voluntarily dials a number and as a result voluntarily uses the cell phone provider's towers to complete the number. The cell phone provider retains records of which towers were used in dialing a call. By voluntarily using the equipment, the cell phone user runs the risk that the records concerning the cell phone call will be disclosed to police.

4

*Id.*

The *Suarez-Blanca* court noted that the issue of cell-site data has complexities. For example, the situation might be different if the Government dialed an individual's cell phone number for the purpose of obtaining cell-site data to locate the individual. *See, e.g., United States v. Forest,* 355 F.3d 942, 951 (6th Cir. 2004), *vacated on other grounds, Garner v. United States,* 543 U.S. 1100 (2005); *see also Suarez-Blanca,* 2008 WL 4200156, at *9 (discussing issue). Similarly, Fourth Amendment concerns might be raised if cell-site data were used to track the present movements of individuals in private locations. *See, e.g., In re App. of U.S.,* 402 F. Supp. 2d 597, 604 (D. Md. 2005); *see also Suarez-Blanca,* 2008 WL 4200156, at *9 (discussing issue). Neither of these concerns are implicated in the present case. The Government seeks only to introduce evidence identifying the cell phone towers that communicated with defendant's cell phone at points in the past, and there is simply no indication or allegation that the Government called defendant's cell phone to purposefully trigger a connection between defendant's cell phone and a cell phone tower.

While defendant cites to a number of cases claiming they establish defendant's legitimate expectation of privacy in cell-site data (DE # 24 at 1-2), these cases–as the Government aptly explains (DE # 31 at 3-4)– are not factually analogous to this case. Each of the cases cited by defendant involves in-person, physical searches of a cell phone itself and the text messages and/or call records located on the phone. *See United States v. Finley,* 477 F.3d 250, 259 (5th Cir. 2007); *United States v. Park,* No. CR 05-375 SL,

2007 WL 1521573, at *5 (N.D. Cal. May 23, 2007); *United States v. Morales-Ortiz*, 376 F. Supp. 2d 1131, 1139 (D.N.M. 2004). None of the cases cited by defendant involve obtaining cell-site data, or even cell phone records generally, from third-party cell phone providers. Having no Seventh Circuit precedent on the issue, this court is persuaded by the well-reasoned decision of the *Suarez-Blanca* court that the logic of the Supreme Court in *Smith* and *Miller* should be extended to cell-site data. Accordingly, this court holds that defendant had no legitimate expectation of privacy in records held by a third-party cell phone company identifying which cell phone towers communicated with defendant's cell phone at particular points in the past. For this reason, the Government's acquisition of defendant's cell-site data presents no Fourth Amendment issues and defendant's motion to suppress this evidence (DE # 24) is **DENIED**.

                **SO ORDERED.**

Date: March 26, 2010

                 s/ James T. Moody
                JUDGE JAMES T. MOODY
                UNITED STATES DISTRICT COURT