UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:09 CR 86 |
| | ) | |
| NICHELLE BENFORD | ) | |

## OPINION and ORDER

This matter is before the court on defendant's motion pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 12 to dismiss the indictment charging defendant with, *inter alia*, four counts of making false statements to a grand jury in violation of 18 U.S.C. § 1623(a). (DE # 19.) For the reasons set forth below, the motion is denied.

## I. BACKGROUND

As the court summarized in its recent order denying defendant's motion to suppress, the Government alleges that on February 13, 2003, at about 5:21 a.m., a witness noticed that Car's Towing in Schererville, Indiana, was on fire. (DE # 1 at 1.) Investigators questioned an individual named Brian suspected of starting the fire, who told the investigators that he was with defendant during the early morning hours of February 13th. (*Id.*) The Government contends that information obtained from defendant's cell phone provider shows that defendant's cell phone communicated with cell phone towers in Chicago around the time of the fire, thus reputing the suspected arsonist's alibi. (DE ## 1, 31.) Defendant was subpoenaed to testify before a grand jury regarding the Government's case against the suspected arsonist. Chief Judge Philip Simon provided defendant with use immunity prior to her testimony. Defendant

testified before the grand jury that she was indeed with the suspected arsonist during the fire; this prompted the Government to charge defendant with four counts of making false statements to a grand jury. (DE # 1 at 3-4.)

Count 1 charges defendant with making the following underlined allegedly false statement:

> Q. Do you know why you were subpoenaed to the grand jury today?
>
> A. Yes.
>
> Q. Tell us why.
>
> A. Um, [Brian] is under investigation for an arson. And I was or am his alibi. So that's why I'm here.
>
> . . .
>
> Q. And you mentioned something about an alibi. Tell use [sic] what you mean by that.
>
> A. <u>Um, well, I was at his house sometime around when that fire was set. So that's it.</u>

(DE # 1 at 3.)

Count 2 charges defendant with making the following underlined allegedly false statement:

> Q. What time did you get to [Brian's] house?
>
> A. Um, a guesstimate, say, four– I can say, 4:30, to be safe. It may have been under that.

> . . .
>
> Q. You got home about 4:30[a.m.] to [Brian's] house, correct?
>
> A. <u>Yes.</u>

(DE # 1 at 5.)

Count 3 charges defendant with making the following underlined allegedly false statements:

> Q. Okay. And what else happened? Anything after that?
>
> A. No. We were laying in bed. And, um, actually– I'm sure I started to –I fell asleep or –nothing major because I fell asleep. And then he got a phone call, and he's, like, you know, "Car's is on fire. Dave just called, Car's is on fire." And he left.
>
> . . .
>
> Q. And there's no way you were in downtown Chicago at the time you received the phone call that Car's was on fire; correct?
>
> A. <u>Correct.</u>
>
> Q. You're certain of that?
>
> A. <u>Yes.</u>
>
> . . .
>
> Q. Come back to my question. Is it possible that you got home at [Brian's] house later than 4:30 and after 5:00 o'clock?
>
> A. Is it possible that I got there at 4:50, 4:35, 4:42? That is possible.

> Q. Okay.
>
> A. That's why I can't give you an exact time what time I walked through the door. I don't know.
>
> Q. Is it possible you got there after Brian received the call from Car's Collision?
>
> A. <u>No.</u>
>
> Q. So it's your testimony that at whatever time that call came in, you were there –
>
> A. <u>I was there.</u>

(DE # 1 at 7-8, ellipses in indictment.)

Count 4 charges defendant with making the following underlined allegedly false statements:

> Q. So what time did you drop Jasmine off, as best as you can remember?
>
> A. 4:10 to 4:15.
>
> Q. Okay. In the morning; correct?
>
> A. Yes.

(DE # 1 at 9.)

## II. ANALYSIS

"The validity of an indictment is to be tested by a reading of the indictment as a whole. An indictment is sufficient if it, first, alleges the elements of the offense charged and fairly informs a defendant of the charge against him or her, and, second, enables

4

the defendant to plead an acquittal or conviction in bar of future prosecutions." *United States v. Watkins,* 709 F.2d 475, 478 (7th Cir. 1983) (internal citations omitted). In this case, defendant challenges four counts of perjury on grounds of ambiguity and vagueness, multiplicity, duplicity, and immateriality.

### *Counts 1-2: Ambiguity & Vagueness*

Defendant argues that Counts 1 and 2 of the indictment must be dismissed because they contain questions and answers that are vague and ambiguous. However, "[w]hen the question and answer may have more than one meaning standing alone, their intended meaning is ordinarily an issue for the jury to determine from their context and other indicia of the witness' intent in giving the answer." *United States v. Martellano,* 675 F.2d 940, 942 (7th Cir. 1982) (quoting *United States v. Williams,* 536 F.2d 1202, 1205 (7th Cir. 1976)).[1] Without some "fundamental ambiguity," the issue should not be taken from the jury. *Id.*

Defendant argues that the question and answer exchange underlying Count 1 contained ambiguity. Defendant specifically takes issue with the Government's

---

[1] *Martellano,* decided in 1982, states that the only issue of law for a trial judge to consider with regard to a perjury charge is materiality– that is, whether the false statement made was a material one. 675 F.2d at 942. "Except for that one issue of law," the Seventh Circuit stated, "the burden, as it does in all criminal cases, rests upon the government to prove the alleged false statement beyond a reasonable doubt." *Id.* However, the United States Supreme Court held in *Johnson v. United States,* 520 U.S. 461, 465 (1997), that materiality is also an issue for the jury, not the trial judge. Thus, *Martellano* remains good law for the majority of its holding, but not on the issue of materiality. As the court explains later in this opinion, defendant's argument that her statements which form the basis of Count 4 of the indictment are immaterial fails because, under *Johnson,* the question belongs to the jury.

5

question: "And you mentioned something about an alibi. Tell use [sic] what you mean by that." Defendant claims it is unclear whether the prosecutor was asking for defendant's definition of the word alibi or for defendant to tell the prosecutor about a specific alibi. Defendant also claims that her answer, "[u]m, well, I was at his house sometime around when that fire was set," could be read as defendant providing an example of any alibi, not necessarily the one she could provide for Brian. However, the exchange immediately preceding that question, in which defendant says "I was or am [Brian's] alibi," prevents the exchange from being so "fundamentally ambiguous" in this respect that the court should take the issue of interpreting it from the jury. *See Martellano*, 675 F.2d at 942 (context of statement is part of ambiguity analysis).

Defendant further argues that her answer in the statement underlying Count 1 that she was "at [Brian's] house sometime *around* when that fire was set" is ambiguous because there is no published case that discusses the exact definition of "around." (DE # 1 at 3, emphasis added). Similarly, with regard to Count 2, defendant argues that the Government's inquiry as to whether she arrived at Brian's at "about 4:30" and her subsequent answer of "[y]es" are ambiguous and vague because of the use of the word "about." The court rejects this argument and sees no "fundamental ambiguity" requiring the court to reject the indictment before a jury may decide whether defendant answered the Government's inquiries falsely. The Seventh Circuit found no ambiguity when a witness was asked if the defendant remained at the house "during the day" because "[e]veryone present . . . knew that the purpose of the examination was to prove

6

where [defendant] was when the crime was allegedly committed." *Williams,* 536 F.2d at 1206. Similarly, everyone who was present when defendant testified knew that the Government was attempting to establish the timeline of events occurring in the early morning hours of February 13th. That the Government and defendant approximated times with words like "about" and "around" does not render their statements so fundamentally ambiguous that the question of defendant's veracity should be taken out of the hands of the jury. "It is understood that many questions may lend themselves to various interpretations when subjected to ingenious scrutiny after the fact, but the words used are to be understood in their common sense, not as they might be warped by sophistry or twisted in pilpul. Imaginative hindsight will not save a defendant who has testified falsely." *Martellano,* 675 F.2d at 942. A jury will decide if defendant has testified falsely in this case.

*Count 2: Multiplicity*

Defendant claims that Count 2 must be dismissed because it is multiplicitous to Count 1. Count 1 charges defendant with falsely stating, "I was at [Brian's] house sometime around when that fire was set." (DE # 1 at 3.) Count 2 charges defendant with falsely answering "Yes" when the Government asked "You got home about 4:30 to [Brian's] house; correct?" (DE # 1 at 5.) Defendant argues that Count 2 should be dismissed because "[t]he two statements now charged in Counts 1 and 2 are essentially the exact same statement." (DE # 19 at 10.)

7

"Multiplicity is the charging of a single offense in separate counts of an indictment." *United States v. Starks*, 472 F.3d 466, 468 (7th Cir. 2006). The Seventh Circuit has not applied the concept of multiplicity to an indictment containing false statement charges, but numerous other circuits have. The Eighth Circuit aptly explained that while "the prosecution may not multiply charges of perjury by repeatedly rephrasing the same question, . . . it is equally clear that separate false statements may be charged in separate perjury counts if they require different factual proofs of their falsehood, notwithstanding their relationship to a common nexus of fact." *United States v. Feldhacker*, 849 F.2d 293, 297-98 (8th Cir. 1988); *see also United States v. Sharpe,* 193 F.3d 852, 865 (5th Cir. 1999) (indictment is not multiplicitous if it charges "separate and distinct acts of perjury, even if the acts are all related and arise out of the same transaction or subject matter," so long as the charges "require different factual proof of falsity"); *United States v. Doulin,* 538 F.2d 466, 471 (2d Cir. 1976) (multiplicity does not exist where each query posed sought information and proof of each falsehood necessitated the establishment of different facts).

In this case, the Government attempted to establish a timeline of the events that took place in the early morning hours of February 13th by eliciting information from defendant as to her whereabouts that morning. As a result, there are necessarily some connections between the various questions posed and the answers given. "In situations such as this where the grand jury is focusing its attention upon a series of related acts occurring over a period of time, it is inevitable that its questions will overlap to a certain

8

degree. But such overlapping alone is not enough to require that the allegedly false responses of the witness be consolidated into a single perjury count where, as here, each of the critical inquiries was directed to a separate facet of the overall transaction being investigated." *Doulin,* 538 F.2d at 471.

With regard to Count 1, the Government will have to satisfy a jury that defendant was not at Brian's house "sometime around" when the fire was set. With regard to Count 2, the Government will have to prove that defendant did not arrive at Brian's house at 4:30 a.m. The proof that would be required to establish Count 1 differs from that of Count 2 in two respects. First, convincing the jury that defendant was lying by making the second statement will require proof of the time of defendant's actual arrival at Brian's house, while convincing the jury that she was lying by making the first statement simply requires proof of defendant's presence at Brian's house.

Second, the factual proof that would be required for the Government to succeed on each Count is necessarily different in terms of the scope of time involved. The Government concedes that to succeed on Count 1, it would have to present evidence of defendant's whereabouts over a broad enough span of time to convince the jury that defendant was lying when she said that she was at Brian's house "sometime around" when the fire was set. By contrast, with regard to the statement underlying Count 2, the Government must only prove that defendant was not at Brian's at 4:30 a.m. Whether the Government can present proof to satisfy a jury that defendant was lying when she

9

made the statements at issue in Count 1 and 2 remains to be seen. For now, the court need only determine whether Counts 1 and 2 are multiplicitous; they are not.

*Count 3: Duplicitity & Ambiguity/Vagueness*

Defendant also alleges that Count 3 is duplicitous, in that within a single count, defendant is charged with making several false statements, and that it is "wrought with" ambiguity and vagueness. (DE # 19 at 13.) Count 3 charges defendant with making the following underlined, allegedly false statements:

> Q. Okay. And what else happened? Anything after that?
>
> A. No. We were laying in bed. And, um, actually – I'm sure I started to – I fell asleep or – nothing major because I fell asleep. And then he got a phone call, and he's, like, you know, "Car's is on fire. Dave just called, Car's is on fire." And he left.
>
> . . . .
>
> Q. And there's no way you were in downtown Chicago at the time you received the phone call that Car's was on fire; correct?
>
> A. <u>Correct.</u>
>
> Q. You're certain of that?
>
> A. <u>Yes.</u>
>
> . . . .
>
> Q. Come back to my question. Is it possible that you got home at [Brian's] house later than 4:30 and after 5:00 o'clock?

10

> A. Is it possible that I got there at 4:50, 4:35, 4:42? That is possible.
>
> Q. Okay.
>
> A. That's why I can't give you an exact time what time I walked through the door. I don't know.
>
> Q. Is it possible you got there after Brian received the call from Car's Collision?
>
> A. <u>No.</u>
>
> Q. So it's your testimony that at whatever time that call came in, you were there –
>
> A. <u>I was there.</u>

(DE # 1 at 7-8.) Defendant argues that Count 3 accuses defendant of falsely stating that she was not in Chicago when *she* received a phone call about the fire, and then also accuses defendant of falsely stating that it was not possible that she got to Brian's house after *Brian* received the phone call about the fire. Defendant claims that these two distinct charges are improperly combined into a single count. Defendant further claims that the Government's questions were ambiguous and vague in that they reference both Brian and defendant receiving a phone call about the fire.

Until now, neither defendant nor the Government has ever suggested that it was defendant, herself, who received a phone call in the early morning hours of February 13th regarding the fire; there seems to have been no dispute during the grand jury proceedings that it was Brian who received the phone call, not defendant. Given the

context of the question and answer, defendant's statement lacks fundamental ambiguity. *See Martellano,* 675 F.2d at 942. Accordingly, the matter of ambiguity is not even up for debate; instead, the jury should consider it. *Martellano,* 675 F.2d at 942; *Williams,* 536 F.2d at 1206 ("'[T]he possibility that a question or an answer may have a number of interpretations does not invalidate either an indictment or a conviction after a jury charge which, as here, requires the jury to determine that the question as the defendant understood it was falsely answered . . . .'") (quoting *United States v. Chapin,* 515 F.2d 1274, 1280 (D.C. Cir. 1975)).

Nevertheless, even assuming that the Government asked defendant both about receiving the phone call herself and about Brian receiving the phone call, in perjury cases, "where one offense is committed, all the false declarations pertaining to that offense can be charged in one count without making that count duplicitous." *United States v. Isaacs,* 493 F.2d 1124, 1155 (7th Cir. 1975) (citations omitted). In this instance, it is clear from the testimony excerpted in Count 3 of the indictment that the line of questioning related to what was happening and where defendant was located when Brian and/or defendant received notice via telephone regarding the fire. The fact that the Government may have made two different inquires (one assuming defendant received the call, and one assuming Brian received the call) does not make the indictment based on those inquiries defective.

"[T]wo or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity."

*United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982). Thus, the Government *could have* charged defendant with separate offenses in light of the testimony referenced in Count 3 of the indictment; however, it was not required to do so. *United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976). "The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecution." *Id.* In this case, the Government chose not to seek two penalties for defendant's allegedly false statements on the subject of her whereabouts at the time of the phone call regarding the fire. That it did so does not render the indictment defective.

### Count 4: *Immateriality & Ambiguity*

Defendant also objects to Count 4 of the indictment, in which the Government charges defendant with falsely responding to the question, "So what time did you drop Jasmine off, as best as you can remember?" with the answer, "4:10 to 4:15." (DE # 1 at 9.) Defendant argues that the Government's questions regarding what time she dropped off Jasmine were not material to the grand jury's inquiry.

"[T]here is no doubt that materiality is an element of perjury under § 1623." *Johnson v. United States*, 520 U.S. 461, 465 (1997). A statement is material if it has "'a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaker to which the statement was addressed." *United States v. Gellene*, 182 F.3d 578, 590 (7th Cir. 1999) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). However, the United States Supreme Court has held that precedent "dictates that

13

materiality be decided by the jury, not the court." *Johnson,* 520 U.S. at 465. At this point, the court need only decide whether the indictment sufficiently alleges materiality. *United States v. Bieganowski,* 313 F.3d 264, 286 (5th Cir. 2002). "In determining whether an allegation of materiality in an indictment is sufficient, the proper inquiry is whether the allegation is potentially capable of being proved material by the government at trial, and whether the allegation is sufficient to support an inference of materiality." *Id.* (internal quotation marks omitted).

In this case, the Government could prove the materiality of defendant's testimony regarding what time she dropped off her friend Jasmine to the issue before the grand jury– whether Brian may have committed arson. In order to assess the legitimacy of Brian's alibi– that he was with defendant around the time the fire started–one must inquire into defendant's whereabouts around the time the fire was started. The Government's allegations are sufficient to support an inference of materiality, which is all that is required at this point. *Bieganowski,* 313 F.3d at 286. Whether defendant actually made a "false material declaration" in violation of § 1623(a) is for the jury to decide.

Defendant emphasizes that the Government asked defendant to answer "as best as you can remember." However, this fact does not alter this court's holding that the defendant's conduct as alleged in Count 4 should be assessed by a jury, and not by this court. The Government's question, even with the phrase "as best as you can remember" possessed no ambiguity and whether the defendant answered falsely will be decided at

trial. In *Williams,* the defendant was charged with falsely answering the question "Did Mr. Williams leave that address *to your memory or knowledge* any time during January 14th?" 536 F.2d at 1206 (emphasis added). The Seventh Circuit held that "[t]he [Government's] qualifying words 'to your memory or knowledge' did not prevent the testimony from being perjurious. Whether the witness remembered the events of January 14th was a question for the jury." *Id.* The court will allow the jury to decide whether defendant violated the law in answering the Government's question in this case as well.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Counts 1-4 (DE # 19) is **DENIED.**

**SO ORDERED.**

Date: April 12, 2010

          s/ James T. Moody
          JUDGE JAMES T. MOODY
          UNITED STATES DISTRICT COURT