UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09 CR 86 |
| | ) | |
| NICHELLE BENFORD | ) | |

## OPINION and ORDER

This matter is before the court on defendant Nichelle Benford's motion to exclude the testimony of Anthony Imrisek. (DE # 22.) The Government seeks to call Imrisek as an expert witness to testify regarding a technique whereby phone calls allegedly made from defendant's cell phone around the time she told a grand jury she was with her boyfriend Brian Booker (thus providing Booker with an alibi for a fire he is suspected of having started) can be used to determine the approximate location of defendant when she allegedly made the calls. Imrisek testified at a *Daubert*[1] hearing regarding his background and the methodology used in arriving at his conclusions. The court finds the proposed testimony by Imrisek to be both reliable and relevant for the reasons set forth below and denies defendant's motion.

I.  BACKGROUND

The Government alleges that on February 13, 2003, at about 5:21 a.m., a witness noticed that Car's Towing in Schererville, Indiana, was on fire. (DE # 1.) Investigators questioned Brian Booker, who was suspected of starting the fire. Booker told the

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

investigators that he was with Benford during the early morning hours of February 13th. (*Id.*)

The Government contends that local police used a State of Indiana subpoena to obtain the cell phone records belonging to Benford and Booker. (DE # 31 at 1.) The information obtained includes "cell-site data"; essentially, this data reveals the general vicinity of where a cell phone was located at a particular point in time by identifying which cell tower communicated with the cell phone while it was turned on. (*See id.* at 2.) The Government contends that Benford's cell-site information shows that Benford's cell phone communicated with cell phone towers in Chicago around the time of the fire, thus reputing Booker's alibi. (DE ## 1, 31.)

Benford was subpoenaed to testify before a grand jury regarding the Government's case against Booker. Chief Judge Philip Simon provided Benford with use immunity prior to her testimony. Benford testified before the grand jury that she was indeed with Booker around the time when the fire purportedly started. (DE # 1 at 3-4.) The Government then charged Benford with making false statements to a grand jury, and the Government intends to use defendant's cell-site data, as interpreted by Imrisek, as part of its case against defendant. (*Id.*)

II.  **DISCUSSION**

FEDERAL RULE OF EVIDENCE 702 allows the admission of expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The United States Supreme

Court has stated that RULE 702 requires district courts to act as gatekeepers in order to assure that all expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). The Supreme Court has extended this responsibility beyond scientific evidence to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999).

In this case, the court finds that cell-site data associated with Benford's cell phone and Imrisek's anticipated testimony regarding what this data might reveal about Benford's whereabouts on February 13, 2003, are relevant to this case. An expert need not have an opinion on the ultimate question to be resolved to satisfy the relevance requirement. *United States v. Allen,* 390 F.3d 944, 949 (7th Cir. 2004). In this case, the relevance of Imrisek's anticipated testimony is clear. Benford is charged with lying to a grand jury about her whereabouts on February 13, 2003, to provide an alibi for Booker; to the extent that her cell phone data suggests that she was not where she told the grand jury she was, the data and expert testimony related to the data are relevant.

Further, the court finds that Imrisek's anticipated expert testimony is reliable. A district court has great latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable. *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009). The Seventh Circuit has advised that "[t]o determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive a particular conclusion." *Id.*

At the *Daubert* hearing, Imrisek testfied that he has a Bachelor's degree in electrical engineering. Currently, Imrisek is employed as a radio frequency ("RF") engineer for Ericsson (the company that recently acquired Sprint Nextel), assisting with management of its cell phone network. Imrisek has held the position of RF engineer since 1997. As part of his job duties, Imrisek has acquired personal knowledge of the cell towers in the Chicago area, and the coverage areas that relate to those towers. Imrisek's job duties at Ericsson include determining cell-site coverage. These facts indicate that Imrisek's full range of experience and training make Imrisek qualified to testify as to Benford's cell-site data and that his testimony will be reliable.

The court also finds that Imrisek's methodology is reliable. The Supreme Court, in *Daubert,* laid out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has general acceptance. *Daubert,* 509 U.S. at 593-94. "[T]hese factors do not establish a definitive checklist" for determining the reliability of expert testimony. *Trustees of Chi. Painters and Decorators Pension v. Royal Int'l Drywall & Decorating Inc.,* 493 F.3d 782, 787 (7th Cir. 2007). The Seventh Circuit has described the *Daubert* test as a "non-exhaustive list of guideposts." *Am. Honda Motor Co., Inc. v. Allen,* 600 F.3d 813, 817 (7th Cir. 2010). Further, the Seventh Circuit has employed other benchmarks which appear in the 2000 Advisory Committee's Notes to RULE 702 to

gauge expert reliability, including whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying"; "[w]hether the expert has adequately accounted for obvious alternative explanations"; and "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Id.* (alterations in *Allen*).

In this case, Imrisek testified to the following facts. When a cell phone makes a call, it exchanges information with a "cell site" (a term synonymous with "cell tower"), which is often set on a building or water tower. A cell site has a "coverage area," which is a radius of space in which that cell site could communicate with a cell phone. Ericsson maintains records regarding the time a call is originated and terminated, and the cell-site tower associated with the beginning and end of a call. In short, Ericsson maintains "cell-site data," which shows which cell phone tower handled a particular call.

Using Benford's cell phone call records for February 13, 2003, Imrisek employed a "prediction tool," which generated a map of the coverage area for each of the cell sites associated with each of Benford's cell phone calls. Imrisek created a map with a number of circles representing the approximate locations where Benford's cell phone was used. Imrisek testified that in order for a cell phone to connect with a cell site, it would have to be within the cell site's coverage area. Imrisek often creates these coverage maps for business purposes, including to assist Ericsson's sales force.

Benford's counsel argued that Imrisek's methodology has not been subjected to peer review and that Imrisek did not know the potential rates of error associated with his methodology. However, these considerations are simply a few of many factors that the court is to consider. Imrisek testified that there is no dispute in his technical community as to the methods he used to analyze Benford's cell-site data or to create the coverage area maps using the prediction tool. Imrisek's reliance on Ericsson's data and reports served as a reliable basis for his testimony because these materials are facts or data of a type reasonably relied upon by experts in the field of cell phone and cell tower technology. *United States v. Gardner,* 211 F.3d 1049, 1054 (7th Cir. 2000). While experts' opinions are worthless without data and reasons, *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003), the court has satisfied itself that Imrisek's analysis yielded facts and data sufficient to support his proposed testimony.

Further, Imrisek's testimony relates to matters growing naturally and directly out of working as a radio frequency engineer for at least 12 years. *Allen,* 600 F.3d at 817. He frequently conducts analysis and creates maps for business purposes, not simply for the purposes of testifying or for litigation. *Id.* The methods used by Imrisek appear subject to testing and falsification. *Daubert,* 509 U.S. at 593-94. Though Benford's counsel emphasized that the prediction tool used by Imrisek merely predicted coverage areas, Imrisek testified that Ericsson constantly conducts tests by using cell phones and tracking their connections to cell sites, which keeps their predictions as accurate and up-to-date as possible. Benford's counsel also highlighted the fact that Imrisek primarily

6

creates maps and analyzes data for business purposes. However, "the question is not whether [Imrisek] was a professional witness; it is whether he was an expert" on the intricacies of cell sites and the associated data. *United States v. Parra,* 402 F.3d 752, 759 (7th Cir. 2005). The court finds that he is.

### III. CONCLUSION

For the foregoing reasons, the court finds that the expert testimony that is anticipated from the Government's expert witness, Anthony Imrisek, is sufficiently relevant and reliable under *Daubert*. Accordingly, Benford's motion to exclude Imrisek's testimony (DE # 22) is **DENIED**.[2]

                                          **SO ORDERED.**

Date: June 8, 2010

                                         s/ James T. Moody
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT

---

[2] Benford's motion also initially included a request for additional documents related to Imrisek and his anticipated testimony. In advance of the *Daubert* hearing, Benford's counsel indicated that he had resolved this dispute with the Government, leaving only the *Daubert* issues for resolution.